Opinion issued August 10, 2006 
     










In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00784-CR
NO. 01-05-00785-CR




RAYMOND EARL VINSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law Number One
Harris County, Texas
Trial Court Cause Nos. 1273452 & 1289313




O P I N I O N

          A jury convicted appellant, Raymond Earl Vinson, of assault on a household or
family member and interference with an emergency telephone call. See Tex. Pen.
Code Ann. §§ 22.01(a)(1), (b)(2), 42.062(a) (Vernon 2003). After appellant had
pleaded true in the assault case to an enhancement allegation that he had previously
been convicted of murder,


 the trial court assessed appellant’s punishment at 365 days
in jail and a $500 fine for both cases, with jail time to run concurrently. See id. §§
12.21, 12.43(a) (Vernon 2003). We determine (1) whether the trial court erred in
admitting the hearsay statements of the complainant, Lalania Hollimon, under the
excited-utterance exception to the hearsay-exclusionary rule; (2) whether appellant
preserved a Confrontation Clause challenge to the admission of a 9-1-1 dispatch
operator’s hearsay statements; and (3) whether the trial court violated the
Confrontation Clause by admitting Hollimon’s same hearsay statements described
above. See U.S. Const. amends. VI, XIV. We affirm the judgment.
Background
          In trial court cause number 1273452 (appellate cause number 01-05-00785-CR),
appellant was charged with the Class A misdemeanor offense of assault on a
household or family member. See Tex. Pen. Code Ann. § 22.01(a)(1), (b)(2). In trial
court cause number 1289313 (appellate cause number 01-05-00784-CR), appellant
was charged with the Class A misdemeanor offense of interference with an emergency
telephone call. See id. § 42.062(a). The two cases were tried together.

          During trial, the State offered the testimony of Deputy Chapman, the officer
who had responded to a report by a 9-1-1 dispatch operator of a possible emergency
in appellant and Hollimon’s apartment. Over appellant’s objection on the ground of
lack of personal knowledge, the trial court allowed Deputy Chapman to testify to what
the 9-1-1 dispatcher had told him about two 9-1-1 calls. The dispatcher’s statements
to the deputy were as follows. A 9-1-1 hang-up call was made from appellant and
Hollimon’s apartment. The 9-1-1 dispatch operator returned that interrupted call to
inquire whether there was an emergency. A male answered the return call and
responded that there was no emergency. However, the dispatch operator could hear
a “disturbance in the background” and “somebody yelling” for police assistance. 
          Ten to fifteen minutes passed from the time that the initial 9-1-1 hang-up call
was made to the time of Deputy Chapman’s arrival at appellant and Hollimon’s
apartment. When Hollimon answered the door, she “had injuries to her face”; her
injuries appeared to be recent; she appeared to be in pain; and she was “visibly
shaken,” “shaking,” “a little excited,” and “scared.” Hollimon was also “moaning
about”; “her lips were swollen”; there were “some abrasions on her”; she had a deep,
one-to-two-inch, “severe” cut to her lower lip that would probably have to be stitched
by medical personnel; “she had a towel on her face”; there “was blood on the towel”;
and “it was obvious . . . that the injuries that she sustained [were] still in effect.” In
addition, the apartment was in disarray, and there was blood on the floor.
          Upon Deputy Chapman’s initial inquiry of, “[W]hat happened[?],” Hollimon
“advised [Deputy Chapman] that she was assaulted” by her boyfriend. Appellant then
objected to hearsay and to “any further testimony about what Ms. Hollimon said” on
the basis of the Confrontation Clause and Crawford.


 The trial court overruled
appellant’s objections, but allowed appellant running objections to the deputy’s
testimony of Hollimon’s statements. Deputy Chapman then testified as follows:
Deputy:Well, I asked . . . what happened. . . . [S]he described to me
that she was assaulted by her boyfriend. And I began to
question her about the assault. And, during the questioning
. . . a black male came from the living room area, and was
saying, “Tell him the truth. Tell him the truth.” And, . . .
this male came out and he . . . had no shirt on. And, he was
sweating profusely. At that point, I asked her who he was[.] 
She described him as her boyfriend. Or, common law
spouse. And, told me that his name was “Vinson.” And, he
was the person [who] assaulted her. 
          When appellant entered the room, he “was very excited,” was shirtless, was
sweating profusely, had no visible injuries, and demanded that Hollimon “[t]ell [the
deputy] the truth” so that appellant would not be taken to jail. Apparently while
appellant was still present,


 Hollimon told the deputy that she and appellant, who had
been living together, had been having problems; that appellant had decided to move
out; that appellant had become angry while packing; that they had begun arguing; that
appellant had punched her in the face while she lay on the living room couch; that
appellant had knocked or taken the phone from her hand when she had tried to call 9-1-1; that she had then run to the kitchen; that appellant had begun removing his belt
in the kitchen as if to whip her, although he did not do so; that they had struggled in
the kitchen; and that he had then whipped her with an extension cord.
          Deputy Chapman secured appellant and placed him in the back of his patrol car. 
At that point, Deputy Chapman called his partner for back-up. When the partner
arrived, he took pictures of Hollimon’s injuries, as well as of the apartment, which was
in disarray.
          Neither Hollimon nor the 9-1-1 dispatch operator testified at trial. Appellant
asserts three points of error on appeal:
1.The trial court erred in allowing Hollimon’s statements into
evidence, through Deputy Chapman’s testimony, under the
excited-utterance exception to the hearsay-exclusionary rule;
 
2.The trial court erred in allowing the 9-1-1 dispatcher’s statements
into evidence, through Deputy Chapman’s testimony, because
doing so violated the Confrontation Clause; and
 
3.The trial court erred in allowing Hollimon’s statements into
evidence, through Deputy Chapman’s testimony, because doing so
violated the Confrontation Clause.
 
The Excited-Utterance Exception to the Hearsay Rule
          In his first point of error, appellant argues that the trial court erred in allowing
Deputy Chapman to testify, under the excited-utterance exception to the hearsay-exclusionary rule, to what Hollimon had told him when he investigated the 9-1-1 calls.
          A trial court has broad discretion in determining whether evidence is admissible
as an exception to the hearsay-exclusionary rule. See Zuliani v. State, 97 S.W.3d 589, 
595 (Tex. Crim. App. 2003); Kubin v. State, 868 S.W.2d 394, 396 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). A trial court’s decision to admit or to
exclude hearsay will not be reversed unless the trial court committed an abuse of
discretion. Zuliani, 97 S.W.3d at 595 (citing Coffin v. State, 885 S.W.2d 140, 149
(Tex. Crim. App. 1994)); see Lawton v. State, 913 S.W.2d 542, 553–54 (Tex. Crim.
App. 1994) (citing Smith v. State, 683 S.W.2d 393, 404 (Tex. Crim. App. 1984)). If
a trial court’s action falls within the “‘zone of reasonable disagreement,’” the
reviewing court is bound to abide by the trial court’s decision. Salazar v. State, 38
S.W.3d 141, 153–54 (Tex. Crim. App. 2001) (quoting Montgomery v. State, 810
S.W.2d 372, 390–91 (Tex. Crim. App. 1990) (op. on reh’g)).
          An excited utterance, one of the exceptions to the hearsay-exclusionary rule, is
“[a] statement relating to a startling event or condition made while the declarant [is]
under the stress of excitement caused by the event or condition.” Tex. R. Evid.
803(2). “The basis underlying the admission of this class of evidence is a
psychological one, namely, the fact that when a man is in the instant grip of violent
emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary
to the fabrication of a falsehood and the ‘truth will out.’” Evans v. State, 480 S.W.2d
387, 389 (Tex. Crim. App. 1972). That is, “the statement is trustworthy because it
represents an event speaking through the person rather than the person speaking about
the event.” Zuliani, 97 S.W.3d at 595. Accordingly, “the critical determination is
‘whether the declarant was still dominated by the emotions, excitement, fear, or pain
of the event’ or condition at the time of the statement.” Id. at 596 (quoting McFarland
v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). Other factors that the court
may consider include the length of time between the occurrence and the statement and
whether the statement was made in response to questioning; however, these factors are
not dispositive. See id. at 595–96; Penry v. State, 903 S.W.2d 715, 750–51 (Tex.
Crim. App. 1995); Lawton, 903 S.W.2d at 553.
 
          We hold that the trial court acted within its discretion in implicitly concluding
that all of Hollimon’s complained-of statements to Deputy Chapman were excited
utterances and thus not excluded by the hearsay-exclusionary rule. When considered
in the light required by the abuse-of-discretion standard of review, the record is replete
with descriptions of Hollimon as “visibly shaken,” “excited,” and “scared,” as well as
recently injured and bloody, when she spoke to Deputy Chapman. The record also
establishes that only 10 to 15 minutes had elapsed from the time of the initial 9-1-1
call to the time that Deputy Chapman arrived on the scene and encountered Hollimon. 
Given these facts, the trial court could reasonably have concluded that Hollimon was
still dominated by the emotions of her attack when she made the statements to Deputy
Chapman. See Zuliani, 97 S.W.3d at 595–96; Cantu v. State, 842 S.W.2d 667, 682
(Tex. Crim. App. 1992). Therefore, we hold that the trial court did not abuse its
discretion by admitting into evidence, as an excited utterance, the testimony of Deputy
Chapman regarding statements made to him by Hollimon. See Tex. R. Evid. 803(2).
          We overrule the first point of error.
Confrontation Clause
          In his second and third points of error, appellant argues that the trial court
violated his Sixth Amendment right to confront witnesses against him when it
admitted into evidence, through the testimony of Deputy Chapman, out-of-court
statements made by the 9-1-1 dispatch operator and Hollimon. 
A.      The 9-1-1 Dispatch Operator’s Statements 
          We need not reach the merits of appellant’s third point of error, which asserts
that the trial court violated the Confrontation Clause when it allowed Deputy Chapman
to testify to the dispatch operator’s statements, because appellant’s trial counsel failed
to preserve error. See Tex. R. App. P. 33.1(a). Appellant’s trial counsel objected to
the testimony of Deputy Chapman regarding statements made by the dispatch operator
on the ground of lack of personal knowledge, not on the ground of a violation of the
Confrontation Clause. When the appellate complaint fails to comport with the trial
objection, nothing is preserved for review. See Swain v. State, 181 S.W.3d 359, 367
(Tex. Crim. App. 2005); Schultze v. State, 177 S.W.3d 26, 41 (Tex. App.—Houston
[1st Dist.] 2005, pet. ref’d); see also Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim.
App. 2005) (explaining that when objection is not sufficiently specific and can be
construed as falling under either Rules of Evidence or Confrontation Clause, objection
is not preserved for appeal). Even after Crawford v. Washington, 541 U.S. 36, 124 S.
Ct. 1354 (2004), the U.S. Supreme Court’s seminal opinion construing the
Confrontation Clause, one must still preserve such a challenge for appeal. Campos v.
State, 186 S.W.3d 93, 98 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that
defendant waives appellate challenge based on Confrontation Clause, even after
Crawford, for failure to object at trial); see also Bunton v. State, 136 S.W.3d 355, 369
(Tex. App.—Austin 2004, pet. ref’d) (holding that there is “nothing in Crawford that
would excuse appellant for failing to make a confrontation claim at trial”). 
Accordingly, we hold that appellant waived this challenge on appeal.


 See Campos,
186 S.W.3d at 98; see also Tex. R. App. P. 33.1(a).
          We overrule the third point of error.
B.      Hollimon’s Statements
          In his second point of error, appellant argues that the trial court violated the
Confrontation Clause by admitting Hollimon’s out-of-court statements.
          The applicable provision of the Sixth Amendment, often referred to as the
Confrontation Clause, provides that “[i]n all criminal prosecutions, the accused shall
enjoy the right . . . to be confronted with the witnesses against him.” U.S. Const.
amend VI. The right to confront adverse witnesses is available in federal and state
prosecutions. See Pointer v. Texas, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069 (1965). 
Our standard of review in this case, which involves some ambiguous historical facts
and their application to the law, is mixed: “Although we defer to a trial court’s
determination of historical facts and credibility, we review a constitutional legal
ruling, i.e. whether a statement is testimonial or non-testimonial, de novo.” Wall v.
State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); see also Lilly v. Virginia, 527
U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999) (stating that courts should “independently
review” whether out-of-court statements violate Confrontation Clause).
          1.       The Law: Testimonial Statements

          The U.S. Supreme Court has interpreted the Confrontation Clause to prohibit
a witness from recounting a declarant’s out-of-court statements that are testimonial
unless (1) the declarant is unavailable to testify and (2) the defendant had a prior
opportunity to cross-examine the declarant regardless of whether the declarant’s
statements are deemed reliable by the court. See Crawford, 541 U.S. at 68, 124 S. Ct.
at 1374; accord Wall, 184 S.W.3d at 734–35 (citing Crawford, 541 U.S. at 68, 124 S.
Ct. at 1374).
          The Crawford Court declined to give a comprehensive definition of what
constituted testimonial statements. See Crawford, 541 U.S. at 67, 124 S. Ct. at 1374. 
However, the Court explained that the Confrontation Clause’s focus on testimonial
hearsay “applies to ‘witnesses’ against the accused—in other words, those who ‘bear
testimony[]’” and that “‘[t]estimony,’ in turn, is typically ‘[a] solemn declaration or
affirmation made for the purpose of establishing or proving some fact.’” Id. at 51, 124
S. Ct. at 1364 (quoting 2 N. Webster, An American Dictionary of the English
Language (1828); brackets in original). The Court also explained that “testimonial”
applies “at a minimum to prior testimony at a preliminary hearing, before a grand jury,
or at a former trial; and [responses] to police interrogations.” Id. “Interrogation”
refers not to the legal interpretation of the term, but, rather, to the term’s colloquial
application. Id. at 53 n.4, 124 S. Ct. at 1365 n.4. The Crawford Court also indicated
that a “core class of ‘testimonial’ statements” exists: (1) ex parte in-court testimony,
(2) affidavits, (3) depositions, (4) confessions, (5) custodial examinations, and (6)
statements made under circumstances that would lead an objective witness reasonably
to believe that the statement would be available for use at a later trial. Id. at 51, 124
S. Ct. at 1364; accord Wall, 184 S.W.3d at 735 n.11 (citing Crawford and also noting
that this final (and broadest) category of what can constitute “testimonial” is one on
which lower courts rely most heavily to ensure compliance with Confrontation
Clause); Campos, 186 S.W.3d at 97.
          Since Crawford, many courts across the country have struggled with what
constitutes a “testimonial” statement. See Wall, 184 S.W.3d at 737. Very recently,
however, the Supreme Court has clarified what “testimonial” means:
Without attempting to produce an exhaustive classification of all
conceivable statements—or even all conceivable statements in response
to police interrogation—as either testimonial or nontestimonial, it
suffices to decide the present cases to hold as follows: Statements are
nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing
emergency. They are testimonial when the circumstances objectively
indicate that there is no such ongoing emergency, and that the primary
purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution.

Davis v. Washington, 126 S. Ct. 2266, 2273–74 (2006);


 accord Cook v. State, No. 01-05-00107-CR, 2006 WL 2043874, at *2 (Tex. App.—Houston [1st Dist.] July 20,
2006, no pet. h.) (quoting and following Davis, 126 S. Ct. at 2273–74). The Davis
Court applied this standard to two statements: statements made about the contents of
a 9-1-1 call and statements made to officers who arrived at the scene of a reported
domestic dispute. See Davis, 126 S. Ct. 2266 passim. The 9-1-1 statements were
made in response to the operator’s preliminary questions asking, for example, what
was happening, whether weapons were used, and who the assailant was. Id. at 2271. 
The at-the-scene statements, also preserved in an affidavit made by the complainant,
were made at a time when there appeared to be no emergency and after the assailant
and the complainant had been separated. Id. at 2271–73.
          The Court first held that the 9-1-1 caller’s statements were not testimonial
because the circumstances of the operator’s interrogation “objectively indicate[d] its
primary purpose was to enable police assistance to meet an ongoing emergency.” Id.
at 2277. In support of this holding, the Davis Court identified several indicators of the
statements’ non-testimonial nature:
●the 9-1-1 declarant was “speaking about events as they were
actually happening,” rather than simply describing past events, as
had been the case in the station-house interview in Crawford;
 
●“any reasonable listener would recognize” that the 9-1-1 declarant
“was facing an ongoing emergency”;
 
●“the nature of what was asked [of] and answered [by]” the 9-1-1
declarant, “viewed objectively, was such that the elicited
statements were necessary to be able to resolve the present
emergency, rather than simply to learn . . . what had happened in
the past”; and
 
●“the difference in the level of formality between” the interviews of
the 9-1-1 declarant and the declarant in Crawford was “striking”
because, unlike in Crawford, the 9-1-1 declarant’s “frantic answers
were provided over the phone, in an environment that was not
tranquil, or even (as far as any reasonable 911 operator could make
out) safe.”

Id. at 2276–77 (emphasis in original). The Davis Court cautioned, however, that “a
conversation which begins as an interrogation to determine the need for emergency
assistance” can evolve into testimonial statements “once that purpose has been
achieved.” Id. at 2277.
          In contrast, the Court held that the at-the-scene statements were testimonial. Id.
at 2278. In support of this second holding, the Court reasoned that
[i]t is entirely clear from the circumstances that the interrogation was part
of an investigation into possibly criminal past conduct . . . . There was
no emergency in progress; the interrogating officer testified that he had
heard no arguments or crashing and saw no one throw or break anything
. . . . When the officers first arrived, [the complainant] told them that
things were fine . . . , and there was no immediate threat to her person.
When the officer questioned [her] for the second time, and elicited the
challenged statements, he was not seeking to determine . . . “what is
happening,” but rather “what happened.” Objectively viewed, the
primary, if not indeed the sole, purpose of the interrogation was to
investigate a possible crime . . . .

Id. Likening the statement before it to that in Crawford, the Court noted:
Both declarants were actively separated from the defendant . . . . Both
statements deliberately recounted, in response to police questioning, how
potentially criminal past events began and progressed. And both took
place some time after the events described were over. Such statements
under official interrogation are an obvious substitute for live testimony,
because they do precisely what a witness does on direct examination;
they are inherently testimonial.

Id. (emphasis in original). Simply put, the complainant’s at-the-scene statements
“were neither a cry for help nor the provision of information enabling officers
immediately to end a threatening situation.” Id. at 2279. Finally, although the Court
necessarily rejected the lower court’s “implication that virtually any ‘initial inquiries’
at the crime scene will not be testimonial,” the Court cautioned that it was not holding
“the opposite—that no questions at the scene will yield nontestimonial answers.” Id.
(emphasis in original).
          In general, the Davis Court cautioned that “statements made in the absence of
any interrogation are [not] necessarily nontestimonial.” Id. at 2274 n.1. The Court
also explained that “even when interrogation exists, it is in the final analysis the
declarant’s statements, not the interrogator’s questions,” that the Confrontation Clause
requires courts to evaluate. Id. 
          2.       Application of the Law to the Facts
                    a.       Hollimon’s Initial Statements Identifying Appellant as Her
Assailant

          We conclude that the initial statements that Hollimon made to Deputy Chapman
upon his arrival at the scene were not testimonial under Davis or Crawford. These
initial statements included Hollimon’s identifying her boyfriend as the assailant and
her identifying the man who entered the living room while she spoke with Deputy
Chapman as that boyfriend. We reach this conclusion for the following reasons. 
          First, Deputy Chapman arrived within 10 to 15 minutes of the 9-1-1 calls’
having been placed. The 9-1-1 call that had originally been placed was disconnected,
and when the dispatcher had called the number back, the male who answered denied
that there was an emergency, while someone in the background was yelling for police
assistance. Deputy Chapman knew this information when he went to the residence. 
When Hollimon answered the door, she was bloody and appeared recently injured, and
the apartment was in disarray. It was against this backdrop that the deputy asked
Hollimon simply, “[W]hat happened[?]” Her reply was that her boyfriend had
assaulted her. Given Hollimon’s bloodied appearance—and given that the deputy
knew that, only minutes before, a woman in that same apartment had been yelling for
police assistance while a man denied that any problem existed—the deputy’s asking
only what had happened was tantamount to his having asked whether an emergency
existed or whether Hollimon needed assistance. The Confrontation Clause does not
prohibit questioning when, as here, its purpose, viewed objectively, is to ascertain if
there is an ongoing emergency. See Davis, 126 S. Ct. at 2276. 
          Furthermore, during the deputy’s subsequent questioning (the extent and
formality of which is not revealed), appellant—who was sweating profusely, shirtless,
and “very excited”—entered the room and implicitly ordered Hollimon to answer in
a certain way so that he would not be taken to jail. Given Hollimon’s and appellant’s
appearance and the other circumstances set out herein, Deputy Chapman’s asking
Hollimon to identify the entering male, when viewed objectively, indicated that the
“elicited statements were necessary to be able to resolve the present emergency, rather
than simply to learn . . . what had happened in the past.” Id. (emphasis in original);
cf. Spencer v. State, 162 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2005, pet.
ref’d) (holding, in case predating Davis, that bloodied and distraught victim’s initial
statements to officers, who were responding to 9-1-1 hang-up call, were not
testimonial under Crawford when record did not show whether statements were made
in response to police questioning and when only question that record showed was
asked was one designed to ensure safety of those at scene).
                    b.       Hollimon’s Remaining Statements   
          Hollimon’s remaining statements were that appellant and Hollimon had lived
together, that appellant had been ready to move from the apartment and had become
angry while packing, and that appellant had interrupted her 9-1-1 call. Also included
in those statements was Hollimon’s description of precisely how appellant had
assaulted her. 
          We hold that Hollimon’s remaining statements were nontestimonial. We reach
this conclusion although the record implies that at least some of those statements were
made in response to further questioning beyond the deputy’s initial query asking what
had happened.


 We base our holding on the following facts. 
          First, we deem the trial court implicitly to have concluded that appellant was
still present when Hollimon made these remaining statements. Our bifurcated standard
of review requires us to defer to the trial court’s implicit determination of the historical
facts. See Wall, 184 S.W.3d at 742. Given the trial court’s legal ruling and the fact
that appellant’s continued presence during Hollimon’s remaining statements would
have supported that ruling (as we discuss below), we deem the trial court implicitly
to have determined that appellant was present during the making of all of Hollimon’s
remaining statements. See id. The historical facts supporting such an implicit
determination are contained in the deputy’s testimony, in which he related that after
he had arrested appellant, he did a “further interview” with Hollimon (the substance
of which was not revealed), which “reaffirmed” what “had happened” (i.e., the events
that she had already related to him). (Emphasis added.) The overall order in which
the deputy related what had happened and what Hollimon had told him also supports
that appellant was present during the entirety of Hollimon’s remaining statements. We
thus conclude that the record must be construed as indicating appellant’s presence
during all of Hollimon’s remaining statements. See id. 
          Second, Hollimon appeared recently and badly injured, and she identified the
man in the room (appellant) as her assailant. That assailant, who was present during
Hollimon’s remaining statements, was still “very excited” and was implicitly ordering
Hollimon to answer in a certain way so that he would not be taken to jail. These facts,
which objectively indicated an ongoing and dangerous situation, render the situation
here very different from that in Davis, in which the assailant was not present during
the interview and, clearly, no emergency existed any longer. See Davis, 126 S. Ct. at
2278 (basing holding that victim’s hearsay statements were testimonial in part on fact
that no emergency or immediate threat existed any longer, victim had told officers that
everything was fine, and assailant had been separated from victim when statements
were made). 
          Third, the deputy responded affirmatively to a question asking whether “in
assessing the situation, and in your training and experience—[the deputy was] trained
. . . to look at the [alleged assailant] . . . to see if they [sic] have any visual wounds”
that might comport with the victim’s description of the assaultive event. (Emphasis
added.) Fourth, Deputy Chapman felt that it was only after his partner—for whom the
deputy called when appellant was placed in the patrol car—had arrived and after the
scene had been secured that he “felt safe that nothing else was going to occur.” Fifth,
the record simply does not reveal what the deputy’s questions were; how structured,
formal, or informal his questioning was; or how many questions he asked in order to
elicit Hollimon’s later statements. Finally, the apartment was not photographed, the
deputy did not call for medical personnel to examine Hollimon, and the deputy did not
question Hollimon further until after the complained-of statements had been made and
appellant had been secured. Compare Wall, 184 S.W.3d at 744–45 (indicating that
court’s conclusion that hearsay statements’ admission violated Confrontation Clause
was bolstered by fact that police photographs of officer’s interviewing declarant
evidenced that investigation was occurring, rather than response to emergency). 
          Given Deputy Chapman’s affirmative response to a query as to whether he was
still assessing the situation when Hollimon was answering his questions, appellant’s
continued and excited presence in the room and his implicitly pressuring Hollimon to
answer in a certain way, the deputy’s opining that the scene did not feel safe until after
appellant had been secured and back-up had arrived (both of which occurred after the
complained-of statements had been made), and the extent of Hollimon’s injuries from
the earlier assault, one could objectively conclude that, by Deputy Chapman’s
questioning Hollimon at that stage, the deputy was continuing to assess the situation
to see if Hollimon was still potentially in danger and needed police assistance and
whether back-up assistance or securing appellant was required. 
          Therefore, although these statements concerned past events and were likely in
response to further questioning by Deputy Chapman, we hold that they were
nontestimonial because they occurred under the circumstances set out above, which
“objectively indicat[ed] that the primary purpose of the interrogation [was] to enable
police assistance to meet an ongoing emergency.” Davis, 126 S. Ct. at 2276.
 
          3.       Summary
          Because we have held that the trial court did not err in overruling appellant’s
Confrontation Clause objection to Deputy Chapman’s testimony of any of Hollimon’s 
statements, we overrule appellant’s second point of error. 
Conclusion
          We affirm the judgment of the trial court.
 
                                                             Tim Taft
                                                             Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.
Publish. See Tex. R. App. P. 47.2(b).